Case today, No. 14-1853, Juice Generation, Inc. v. GS Enterprises, Mr. Acharya. Thank you. Good afternoon and thank you. May it please the court. My name is Nigam Acharya and I'm representing Juice Generation in the appeal of the United States Trademark and Trial Appeal Decision in the case of GS Enterprises v. Juice Generation. This trademark case is about the widespread use of the moniker, Peace and Love, reminiscent of the 1960s, and directly tests the crowded field theory in trademark law. Juice Generation submits that if this is not a crowded field, then the concept of crowded field has very little value in trademark law. It can't be the case that Juice Generation's mark, Peace, Love, and Juice, creates confusion with Peace and Love in a landscape full of Peace, Love formatives. There are at least 41 marks owned by over 30 entities coexisting in the marketplace, and this is a very crowded field and should have been dispositive of the case. I don't remember. Are all of those in the food-related marketplace? Food-related and restaurant services. Is this application on the principal register or the supplemental? It is on the principal register. GS Enterprises does not dispute that the mark coexists with Peace, Love, and Pizza, Peace, Love, and Noodle, Peace, Love, and Ice Cream, Peace, Love, and Popcorn, Peace, Love, and Rocky Road. What do you mean by they don't dispute that it coexists? You mean that these other things, in fact, exist, or they concede that there's no confusion as to them? They concede that they've coexisted with these marketplaces. They haven't put any evidence into the record saying that there's confusion between these entities, which have existed prior to their registration. So your theory is the more crowded the field, the less confusion there is? Less confusion. And then it's like Broadway in the In Re Broadway case. Maybe the more crowded the field, the more confusing. Maybe it's time to slow down on the crowding? Well, but when you get to this crowded place where you're using the moniker that, the reason it's crowded is it's reminiscent of the 1960s theme, it's got that descriptive aspect, is once you get to the point of crowdedness, consumers already learn to decipher between goods and services based on extra elements, whether it's beer, pizza, juice, or some other factor. The consumer base turns into that type of name. Isn't there some point though where there's just – the field is too crowded, and you just keep adding to it? At some point it would become so crowded that the names would be confusingly similar, but we don't have that in this case because it's peace and love versus peace, love, and juice. If we pick something less close, something closer, we'd have more trouble. But we've already – we're still in the field where it's peace, love, and something else. And here we've got peace, love, and juice. And you have, I guess, as I take it, your argument rests on a combination of two things. One is the crowdedness, and second, that the peace, love, and blank has something at least suggestive, maybe somewhat descriptive about it. Yeah, it's just another term that we think consumers have recognized. We've got juice bar services. And so we said peace, love, and juice reminiscent of the 60s, this kind of highly descriptive term at the beginning. And then our extra element, which creates a new commercial impression that we think is – that doesn't create likely a confusion between anything in the space. And we believe the board's decision is erroneous because it's not supported by any type of – the third-party use, the differences in the mark, and the weakness of the mark altogether overwhelmingly show that there couldn't be confusion in the marketplace. GS Enterprises admits that consumers recognize subtle differences in marks in this space. And to defend this decision, GS Enterprises is not going to point to any evidence in the record that they entered was evidence directed towards showing that restaurant services and juice services were related, which juice generation readily conceded. And we believe that the legal conclusion of likelihood of confusion, which gets reviewed de novo, overwhelmingly favors no likelihood of confusion. Here, the peace and love marks are used throughout the United States. GS Enterprises, they've recognized that even in USPTO responses and admissions that they're – that consumers recognize extra elements on their marks. Like in Broadway, Broadway is a very similar case to this, in which case the court said, in view of the crowded field, the mark in Broadway, Broadway was considered a weak term and that customers recognized Broadway versus something else. And there they allowed Broadway versus Broadway pizza, noticing that there's a difference – that consumers have been conditioned to differentiate between those types of marks. Were the Broadway businesses all geographically, in fact, connected with Broadway? Not always. Not always. They were across the country. They entered in evidence of around 400 different listings in multiple – the evidence was very similar in that they were all in the area. They went after the theme of Broadway being New York as we did in the theme of peace and love of the 1960s. And so we think when the factors of confusion are looked into that lens, the board made a clear error in law in finding confusion. But turning to the second point – The word juice was disclaimed though, right? Yeah. Does that change your analysis any as to the crowded field? No, it doesn't. It actually – it goes on to the second point that we think that word actually has the more relevance in the sense that people are looking at peace, love, and juice, peace, love, and beer, peace, love, and ice cream. We entered testimony to show that that's what the marketplace was looking at. It was uncontroverted. No one questioned the credibility of it, which turns to my next point is we think the board created error in that there's not substantial evidence supporting the factual findings, and they're arbitrary and capricious. The board errored by failing to give credit to juice generation's uncontroverted evidence of third-party use, the conditions of the marketplace, which included GS Enterprises' statements about the market, the weakness of the terms peace and love, and the consumer's ability to filter between marks. We think that the board's findings actually rest against the uncontroverted evidence. The board says, well, peace and love are the dominant words, but it's on the contrary. We've introduced evidence to the contrary that says it's not the peace, love words. The peace, love, and juice, the overall impression that creates no likelihood of confusion. So here, even though the board points out correctly that normally the words are the dominant terms, that wasn't the case here. You had evidence to the contrary, and without some type of finding on that issue. What evidence did you present that a customer could distinguish between the differences in peace, love, and whatever follows? Our evidence came into two forms. One, a testimony from our founder who was familiar with the environment, who was familiar with the marketplace, and then also GS Enterprises' own statements about what the marketplace looked like. They had made certain admissions about how customers look at – they found significant the and between peace and juice – peace and love versus peace, love. They had made those admissions on the record. I don't hear you saying very much about the design. Is this viewed as entirely a word mark? Is the design just decorative, or is it limited to the design? No, we also add the design as even compounding this difference. But we think on the words themselves, the mark stands on its own. The design just makes things more – But you haven't applied for the words alone, is that right? We did not apply for – in this application, we did not apply for the words alone. We put them in a design because that's how the customer – how the client was using – how Juice Generation was using it at the time. So if someone uses the words without the design, in your view, is that covered by any registration you might obtain? Not this registration, necessarily, unless they put it in a confusingly similar with the design. It would have to be a complete – we'd have to look at the 16 factors against that design. Do you have pending applications for the words without the design? We have a pending application for the words with juices themselves. With what? With juices themselves, not juice services. We have one pending application for the words with juices themselves, not juices. So the same collection of words without the design, but different goods? With different goods, which we think further obviates the differences and is also how the client uses the mark. And the second thing is we found that – so we think that the board stating that it was unable to find – consumers were conditioned to recognize that entities use peace and love with familiar – with similar services despite uncontroverted evidence of third-party uses, testimony about the marketplace, and even GS Enterprises' own admissions about the marketplace, we think contradicts – it can't – there can't be substantial evidence around that. Because without some type of explanation, the record only speaks one way. And the board must have acted outside the record to go – to side against – to rule against those facts. What do you mean by outside the record? What about human intelligence? Is that outside the record? Are they not permitted to appreciate that the words peace and love and juice are in the dictionary? This wasn't a question of necessarily of what the words meant. These were marketplace definitions. And the Federal Circuit has said that the board should stay within – should let the parties define the marketplace. They are in better position to know what the marketplace then is in the board. And that's in the von Gregg decision. Could you address the issue of whether the board considered the mark as a whole in its entirety? We think the board did not consider the mark in its entirety because we think that the board took peace and love and said it's comprised within it. And then it subtracted the and from the peace love and said, oh, the marks must be the same. And they ignored the disclaimed word saying it had very little impact on the overall impression, which we thought was inconsistent with the testimony that we provided, which was inconsistent with the way they actually get viewed in the market. So if the board assigns zero weight or little weight to a disclaimed word, then do they need to bring that back up into the review in the mark in its entirety? I mean it's got a zero weight. I think in this case, we ordinarily, without our testimonial evidence saying it has weight, it would be inconsistent with the marketplace to give it no weight. Because it's peace, love, and beer, beer disclaimed. No, legally, would it be inconsistent? It would be legally inconsistent because the overall impression is, the overall impressions of the mark are not, are changed by that disclaimed word. So if you can briefly summarize, what is the distinction between your mark and the other peace and love marks? As a whole? So our peace love marks are, we use the theme common to all the 1960s marks. But we've added the unique term, no one else has added juice. And consumers see peace, love, and juice and know there are services. They know, they don't believe their GS's services, they don't believe their Baskin-Robbins peace, love, and ice cream. They know that their peace, love, and juices are. And how does one know? You say they know. Consumers know through our advertising, our branding, our overall marketing strategy. And it's just through that. Did you introduce evidence about what the consumers know? Yes, we introduced testimony regarding what consumers know, and we also introduced comments from juice. I know the testimony of the CEO of the company, but what did you have, customer surveys? We did not have surveys in this case. Well, how do you know what the consumer knows? We went with uncontested testimony at the time. And he was familiar with this marketplace for the last seven years. Uncontested testimony, the CEO, right? Yeah, the CEO. He had looked at the evidence and given his uncontested testimony. No one questioned the credibility. Okay, let's hear from the other side. Okay. Mr. Barks. May it please the court. Good afternoon, Your Honors. My name is Justin Barks. I'm here on behalf of GS Enterprises, aptly in this case. Your Honors, this is a case simply about whether Juice Generation's mark, Peace, Love, and Juice, is likely to confuse the relevant consumers in light of GS Enterprises' family of marks, which include Peace and Love. Now, the board made a determination finding in favor of likelihood of confusion based on one of Applee's marks, specifically the standard character mark, Peace and Love, in Class 43 for restaurant services. This is not a case about whether Applee's marks are valid, whether they are descriptive or not descriptive, or whether they're distinctive. Right, but isn't there case law that indicates that either the strength of the opposer's mark or the descriptive character in some degree is relevant to the likelihood of confusion inquiry, even if not so compelling as to render the registration invalid? Your Honor, in the case in which – two answers to that question because you're talking about strength of the mark and the sixth factor, which is the field. And the question of whether the field – the question of the number and nature of similar marks to the opposer, in this case Applee, is a separate question of the strength of the mark, which actually tends to do with fame of the mark, which is not present in this case. Right. We are not limited to a list of 13 factors. Yes, Your Honor. So strength of the mark does intuitively bear on whether confusion is likely. And there are a number of cases, right, that say that we can consider that. Yes, Your Honor. Without invalidating the opposer's own registration. And I know it's a separate question, but is that not similarly the case with respect to the descriptiveness or suggestiveness, the non-fanciful – I can't get the name of whatever that is – of the terminology being used? Yes, Your Honor. Insofar as there is not an impermissible collateral attack on the registration, those are aspects which the board and in your de novo review of the facts can consider. However, no evidence of descriptiveness or suggestiveness was met by the board that was not – that was outside the bounds of this collateral attack. Appellants actually stated in their brief, in their trial brief before the board, that the term peace and love is descriptive. And then just before you a moment ago, they stated again that peace and love is descriptive in their own – Right, right. This is what I guess I – you're more familiar than I am at the moment with the case law. I thought that the registration applicant is entitled to say that about the opposer's registration without it being a challenge to the validity of the opposer's registration. It is actually somewhat descriptive, and that is a reason that consumers are fundamentally not going to be confused because they're going to see those collection of symbols or words, and they're going to think that's not GS. It's something about the atmosphere, about the mood, what mindset the store wants the customers to have when they come in. Yes, Your Honor. So in that sense, it's relevant without being an impermissible collateral attack. Yes, Your Honor, and the factors, the DuPont factors themselves are necessarily intertwined with one another. Thus, the sixth DuPont factor and the third DuPont factor and the question of whether the marks compared in sight, sound, meaning, and commercial impression, which is an aspect of the strength of the mark. Each of these come together to form the board's decision of whether a likelihood of confusion exists. That's why we have all of those factors. In this case, the question of the DuPont factor number six and whether there are these other marks, that's how appellants raise the issue of distinctiveness of peace and love in the greater field. However, they overstepped that boundary of strength by stating that we had a descriptive mark in its entirety because our mark is peace and love, not the peace-love formatives that appellants state that their mark is and that each and every other third-party use and mark that they raise in the sixth DuPont factor is. As this court stated in Stonecourt, the issue of the sixth DuPont factor is whether or not a poser's mark is present in this field. Every single one of the third-party uses and or registrations because appellee does not – many of them are simply registrations without any additional use information, that these are all peace-love formative or love-peace formative or something-something peace-love. That's not our mark. Our mark is peace and love. Well, when you started your argument, you said something about the family of marks, and I thought you were talking about your client's family of marks. But you're now saying that all these marks that are listed – peace, love, and pizza, peace, love, and ice cream, peace, love, and little donuts and so on – these have nothing to do with your client. They're all third-party, unrelated marks. Yes, Your Honor. The evidence that was proffered by appellants, the Thompson copymark search, the exhibits that were attached to Mr. Helms' deposition, these are all additional marks that they're bringing to the field to compare a poser, GS Enterprises, family of peace and love marks to the world. Well, then how really is it reasonable to counter the argument that the marketplace is already so encumbered with peace and love marks that one more or less isn't going to do – cause any more confusion to your client than may already be out there? I'm sorry, Your Honor? Accepting that there are three or four dozen peace, love, and something-or-else marks that have no relationship to your client, how are you injured by one more of the same? Yes, Your Honor, and this goes to a question that Judge Toronto asked of appellants in his opening. Okay. The 41 or so that appellants are stating are this massive number of registrations and uses are not 41 marks, Your Honor. We do not agree that the number of marks in this field are as many and multitudinous as appellants would tend to have the court believe. Say there are only 10, then we don't have to worry about how many dozens. Yes, Your Honor, but in the case that there are only 10, that does not mean that peace and love is a diluted term that is not afforded the protection under the Trademark Act. In this case, peace and love is distinctive. They're not asking for peace and love. They're asking for peace, love, and juice. Yes, Your Honor, and that brings me to the comparison of the two marks in terms of sight, sound, meaning, and commercial impression. The fact that applicants' appellants have included the word juice at the end of their mark and then proceeded to disclaim the word juice effectively renders their protection over the word peace, love, and juice to just peace and love. Just those two elements. To some extent, maybe the board's reasoning kind of turns on that. That's counterintuitive to me. There are many combinations of words that are more than the sum of their individual parts. The Supreme Court had a decision not long ago about personal privacy and rejected the notion that personal privacy had a meaning that was the result of breaking down the thing into the two pieces and translating personal into personal property or something like that. The trio, peace, love, and whatever, has a meaning, maybe reflecting peace, love, and understanding or something that has maybe some whimsy in it as a trio that the first two don't, standing by itself. And if that's right, and I guess I'm having a little hard time overcoming that, then it seems as if maybe the board, in wiping out the third element number of the trio, focused on the wrong question. Your Honor, I'm going to break your question into a bunch of different – I won't hold that again. Okay. First, Your Honor, the board did not dissect either of the marks. And then essentially bring the mark together and weigh the marks and those individual pieces. Now, the marks can't be compared side by side. They have to be compared as the relevant consumers would see them in the marketplace, and they have to be considered in terms of the general impression that consumers will be left with. In the board's comparison of the two marks, Appley's peace and love mark and Appellant's peace, love, and juice mark were taken apart to determine the dominant portions of these marks. In light of – and this is wholly separate from the board's decision, but under the law, under Tektronix versus Daktronix, a CCPA court in 1976 determined that third-party registrations without any additional use can show dictionary-type meanings of certain words if used throughout the principals and supplemental registers. In this case, we have a number of uses of peace and love in conjunction. Therefore, peace and love are the two words that are joined here. And the addition of the extraneous juice or beer or little donuts is not a part of the dominant elements of the mark. Again, the law also states that disclaimed elements, while must be considered and afforded some amount of weight unless they're generic, they cannot be the dominant elements of the mark. Can they have zero weight? In the case that they're generic of the goods or services, Your Honor, I would imagine that they should have zero weight. In this case, the board found that juice was generic of the goods and services, specifically juice bar services of appellant. Does that mean that the board doesn't have to consider adding that word juice and looking at the mark as a whole? Your Honor, no. As Judge Toronto's – What evidence do we have or what do we have in the record that shows that the board did that? Your Honor, in their consideration of the mark – and I can get you a record site if you prefer that. In their consideration of the mark, the board took procedurally steps to compare the dominant and then the additional nondistinctive elements, the disclaimed elements, and then the design elements and font elements in the appellant's mark. The board stated explicitly that the marks need to be considered in their whole, not just the dominant elements. I know they said that, but where did they do it? What process did they go through? What analysis and what was the resolution of that analysis? Your Honor, to the extent that we have in the board's decision, they stated that the piece love elements were dominant, that the and or the ampersand, which would sound like the word and in appellee's mark, was not distinctive. They stated that because juice had been disclaimed, it was also not distinctive, and then compared piece love and piece end love. Following that, they added in the ampersand and the disclaimed element, stating that even if juice is added to the end of piece love and juice, the dominant elements still outweigh because juice is generic of the goods of the appellant. Then they considered the design elements. They stated that while piece and love is a standard character mark and can be displayed in any font, in any vertical or horizontal, that the design elements were also not distinctive because of the standard character element. So let me – if that doesn't answer your question. What was the evidence that juice is not distinctive? It was a determination by the board of the disclaimer that was included in the application of appellant, Your Honor. And that – I just want to close briefly. It's for these reasons, Your Honors, that appellee respectively requests that this court uphold the determination of the board because the crowded field is not nearly as crowded as appellant contend, and the board did not improperly dissect the marks in their comparison. Thank you. Any more questions? No questions? Thank you. Thank you, Your Honor. Thank you. Mr. Acharya. Thank you. Thank you. So GS Enterprises has made a point that their mark is piece and love, and it's a red herring to say we're attacking the validity of that mark. What we are saying is it's hemmed in on all sides in this marketplace, piece, love, and juice, and deer, and little donuts, and another 30 or so other marks. Can I ask, is the analysis here – in the analysis here, is it right to ask, suppose GS opened a juice bar, used its mark, piece and love, on a juice bar? So identical services. Their registration, I think, is broad enough to cover that. Right? Is that right? I mean, they're – We consider them legally related for this proceeding. Okay. So is it really the case that there would not be likely confusion in that instance? Your juice bar, piece, love, and juice, their juice bar, piece and love? So if they called it piece, love – No, no, no. Piece and love. They used their registered mark on identical services. In this dilute environment with more than 41, we don't argue that we wouldn't be hemmed in just as narrowly as they are. And we would – in order to rule for you, we have to think that that's right, right? Because their registration covers that. No, it doesn't. It wouldn't cover that broadly. It would have to be piece and love, juice bar services, juice bar, juice. Piece and love, juice. And they would be hemmed in just as much as we are, is that they would have to – we would not be able to enforce against that because that's so narrow. Consumers would recognize the difference between piece and love and with juice bar services. Just as we would not be able to – they would know us as piece, love, and juice. If they said piece and love and juice, and juice bar services, it's even questionable there. It's because this is such a crowded field. It's tough to do anything long term in this hemmed out environment. And that's why we see piece, love, and beer, piece, love, and all the other formatives that we see out there. We're not arguing that our mark will be the most powerful mark out there. It's a thinner mark as all these other ones are too. But once you disclaim and juice, aren't you claiming the same mark as the opposers? No, the juice – this court has also said that the disclaim term remains in the analysis of the DuPont factor. It doesn't get dissected. There's no evidence in the record that consumers do not see that as – So the answer is yes or no? No, we don't take – Is it legally correct for the board to assign zero weight to a disclaim? It is not appropriate for zero weight to it. It has to be in the analysis and there's established case law. But why is when you have a mark of three words and you disclaim the third word, how does that differ from a two-word mark? It's another term that changes the consumer impression of the overall mark, whether it's piece, love, and little doughnuts. You say overall mark, we disclaim the third word. Now your overall mark is two words, not three. The disclaimer is part of the entire mark in its commercial impression. And what is accomplished by the disclaimer? It's just saying that we're not going to enforce – it's saying we're not going to enforce juice against juice bar services. That's all that disclaimer means under trademark prosecution guidance. It's saying, all right, we've got juice in this mark. We're not going to enforce it against juice and piece bar services. So I can start selling piece, love, and juice and you're not going to enforce the registration? Piece, love, and juice – piece and love and juice, we wouldn't enforce it against that. You would? We would not. At least if it's limited. If somebody – piece, love, and juice, we would enforce against that. So if I say piece and love and juice, that's not – Or don't disclaim the juice. If we don't disclaim the juice, there would be a likelihood of confusion. Because that word there would cause confusion without the other portion of the mark. Because Apolli has already said that the and between piece and love is distinctive in their mark. You didn't disclaim and, you disclaimed juice. But it's the position of piece, the ampersand between piece and love that Apolli has said is their key to their mark. So if they said piece and love and juice, we would not have a problem with that. If they used piece, love, and juice, we would have a problem with that. What good is your proposed registration? It's not – with 41 in this crowded mark, it would prevent people from just doing the identical. Essentially, more or less, it would keep – it would prevent people – It's not a perfect registration. It's got – it's not a perfect registration. Because it's in a crowded field. And the crowded field doctrine takes that into account. It's hemmed in on all sides that you don't get – But you have to preserve the design, right? The design is the – the design is what we would also be going with. So if I use piece, love, and juice and don't use the flower or whatever that is, there's no recourse? Largely no recourse. This is a very – in a crowded field that where our mark is hemmed in. It's just like piece, love, and pizza, piece, love, and beer. If they started a beer company or if they started a pizza company, it would be piece, love, and pizza. The recourse is limited in the crowded field. And that's the whole idea behind – when you choose a weak mark like this, you don't have an extraordinary amount of protection. You only have a limited amount of protection here. Piece, love, and juice, we would have protection here plus this design element. Nothing more. And the examiner has let this one through, and has let the other one for juice through. And they – You have to disclaim juice in order for it to go through? Yeah, you have to disclaim juice because we're not asserting any rights to juice independent of the mark. That's all the disclaimer is saying. But wasn't the disclaimer with your application as filed? Yeah, we disclaimed juice with the application as filed. It wasn't required by the board? It would have been. It would have been. How do you know? Because just the ordinary – What if they might have disclaimed piece? Piece is not descriptive of the goods, even though – because we're not arguing that it's highly descriptive of the goods. Because piece is highly generic. Yeah, highly generic of the juice. Yeah, highly descriptive. Yeah, it's generic of the juice bar services. And it's just like pizza is generic of pizza services. Yeah, yeah. Thank you. Thank you. Thank you both. The case is taken under submission. Thank you.